While I concur on all other points of the majority opinion, I disagree as to Point III(A) and, therefore, to the ultimate disposition of the case — reversal of the sentencing phase due to improper cross-examination of the jailer, Michael D. Martin.
The majority takes the position that because the prosecutor asked Martin about his personal knowledge about the Whitfield letter, the prosecutor read the contents of the letter to the jury. Purely and simply, such is not the case, as a careful reading of the cross-examination will reflect. On direct examination, the following question was asked of Martin:
 BY MR. JORDAN:
 Q Michael, do you feel Johnny needs mental help or treatment?
 BY THE COURT:
 Is that the question?
 BY MR. JORDAN:
 Q In your layman's opinion?
 A Yes, sir.
On cross-examination, the following took place:
 BY MR. WRIGHT:
 Q You knew that Mr. Lanier had been sent to the Mississippi State Hospital at Whitfield, didn't you?
 A Yes, sir.
 Q You knew that he had been reported on a long history of alcohol and drug abuse.
 A Yes, sir.
 Q And, you knew that it was reported by Dr. Helen C. Robinson, PHD, Clinical Psychologist and Mark Lancaster, MD, Director of Forensic Services that they sent a report back to the sheriff's office and that would help you-all in your incarceration of the defendant, didn't you?
 A Yes, sir.
 Q And, you looked at that report because you had the responsibility of seeing this man —
 A Yes, sir.
 Q And, you saw in that report that he's competent, didn't you?
 BY MR. JORDAN:
 We object to the form of that question. The report is not in evidence. That's not what the report said.
 BY THE COURT:
 Well, he's on cross examination. Both sides have the report. I made it available to you as well as Mr. Wright.
 BY MR. JORDAN:
 Your Honor, we object. It's improper and Mr. Wright knows it's improper.
 BY THE COURT:
 I don't, so I overrule the objection.
 BY MR. JORDAN:
 Your honor, the comment he's competent — for what? That's not the issue and we object to it, Your Honor. Once again we move for a mistrial.
 BY THE COURT:
 Motion is denied.
 BY MR. WRIGHT:
 Q. You're familiar with that, aren't you, Mr. Martin?
 A. Yes, sir.
 Q. And, you're familiar that it was the staff's unanimous opinion that he knew the difference between right and wrong at this time and at the time on December the 28th, 1985?
 BY MR. JORDAN:
 Your Honor, we object to the form of that question and once again we move for a mistrial.
 BY THE COURT:
 Overruled. If he knows he may answer. If he doesn't he can say no.
 A. Yes, sir.
 BY THE COURT:
 Motion for mistrial is denied, also.
 BY MR. WRIGHT:
 Q. And, you saw in that report, you also saw that they mentioned — the staff at Whitfield — no recommendation for further mental treatment —
 BY MR. JORDAN: *Page 494 
 Your Honor, we object. This is all hearsay. Object to it, Your Honor. It's improper and move for another mistrial.
 BY THE COURT:
 Well, your objection is overruled. Motion for mistrial is overruled. You may answer the question.
 A. Yes, sir.
This cross-examination was in response to Martin's statement on direct examination that, in his opinion, Lanier was in need of "mental help." In the course of his duties as a jailer, Martin reviewed the Whitfield report; thus, he had personal knowledge that the report concluded, contradictory to his own opinion, that Lanier was competent, knew right from wrong, and no further mental treatment was recommended.
The prosecutor's two questions of Martin regarding the report were aimed at impeaching Martin's earlier testimony. The report itself was neither admitted into evidence nor read into evidence — in other words, the contents of the report was not used as substantive evidence. The statements from the report were not used for the truth of their assertions, but were used to test the basis of Martin's lay opinion that Lanier needed mental help when he, in fact, knew his opinion differed from that of the mental health evaluation report. It is axiomatic that questions to test the knowledge upon which a witness bases his opinion are proper on cross-examination. See 81 Am.Jur.2d Witnesses § 541 (1976).
There seems to be much ado about the report being hearsay which does not fall under a recognized exception to the rule against hearsay. Again, I point out that the report itself was not read into evidence, or admitted into evidence. The two questions asked Martin about the contents of the report were not used for the truth of their assertions but for the non-hearsay purpose of testing Martin's opinion. See M.R.E. 801. In other contexts, our evidentiary rulings have allowed use of hearsay for the non-hearsay purpose of impeachment. For instance, prior unsworn inconsistent statements of a witness may be used for the non-hearsay purpose of impeaching the credibility of the witness. The limitation on their use, however, is that the statements cannot be used under the guise of impeachment for the primary
purpose of placing before the jury substantive evidence which is not otherwise permissible. As we stated in Moffett v. State,456 So.2d 714 (Miss. 1984):
 It is Hornbook law, firmly imbedded in the caselaw of this State, that unsworn prior inconsistent statements may be used for impeachment of the witness's credibility regarding his testimony on direct examination. The prior inconsistent out-of-court statements made by one not a party may not be used as substantive evidence. [citations omitted]
Id. at 719 [emphasis added]. We went on in Moffett to say, quoting Magee v. Magee, 320 So.2d 779, 783 (Miss. 1975), that:
 [But impeachment] does not mean that the out-of-court statement became evidence on its merits or had any probative value. . . . The rule seems to be universal that the impeaching testimony does not establish or in any way tend to establish the truth of the matters contained in the out-of-court contradictory statement.
Id. at 719-20 [emphasis added].
The same principles apply in the instant case. Martin's personal knowledge of the report, which contradicted his lay opinion, was questioned by the prosecutor to "suggest to the fact finder that direct testimony may not be true because the witness may not be worthy of belief with respect to the matter as to which he testified." Moffett, 456 So.2d at 720. The prosecutor's questions to Martin did not tend to establish the truth of the matters contained in the report, but rather tended to test the basis of Martin's lay opinion. Had the report been admitted into evidence, such that the jury had it "sitting in its lap," Moffett, 456 So.2d at 720, we would certainly have a situation where inadmissible hearsay evidence came in under the guise of impeachment purposes. However, in this instance the two statements from the report were used only *Page 495 
for the non-hearsay purpose of impeaching Martin's opinion by testing the basis of his knowledge, and not as substantive evidence. As such, no error was committed by allowing this cross-examination of Martin.
As to the Confrontation Clause concerns discussed by the majority, I point out again that we are not dealing here with a situation where the report was used as substantive evidence for the truth of its contents. Had it been used that way, I would agree that Confrontation Clause considerations would mandate reversal. However, as the United States Supreme Court recognized in Tennessee v. Street, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), "[t]his case is significantly different from the Court's previous Confrontation Clause cases such as Ohio v.Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980),Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)." Id. 471 U.S. at 413, 105 S.Ct. at 2081. In those cases, notes the Supreme Court, "hearsay evidence was admitted as substantive evidence against defendant," Id.,
thus giving rise to Confrontation Clause problems. In Street,
however, the prosecutor introduced co-defendant's out-of-court confession, not to prove the truth of the confession's assertions, but "for the legitimate, non-hearsay purpose of rebutting respondent's testimony that his own confession was a coerced `copy' of [co-defendant's] statement." Id. at 417, 105 S.Ct. at 2083. As such, the confession "was not hearsay under traditional rules of evidence." Id. at 413, 105 S.Ct. at 2081. The Supreme Court went on to say, "the non-hearsay aspect of [co-defendant's] confession — not to prove what happened at the murder scene but to prove what happened when respondent confessed — raises no Confrontation Clause concerns." Id. at 414, 105 S.Ct. at 2081. Again, these principles apply to the instant case. The two questions asked of Martin about the Whitfield report were used not as substantive evidence, but for the legitimate non-hearsay purpose of impeaching Martin's opinion. As such, Confrontation Clause concerns do not arise.
In conclusion, I disagree with the majority that the report was read into evidence. The record simply does not support such an interpretation. All the record shows is the prosecutor legitimately impeaching Martin's opinion by testing the basis of such opinion. Thus, the questions concerning the report did not raise hearsay concerns, nor did they raise Confrontation Clause concerns. Because I find no reversible error committed by the trial court, I would affirm the verdict of guilty and the jury's imposition of the death penalty.
Joined by ROY NOBLE LEE, C.J., and GRIFFIN, J.